United States District Court
Southern District of Texas
**ENTERED**
March 31, 2017
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| OSVALDO ENRIQUE SANCHEZ | § | |
|     Plaintiff | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. M-16-030 |
| | § | |
| | § | |
| NANCY A. BERRYHILL, | § | |
| ACTING COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
|     Defendant | § | |

## REPORT & RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g). This case was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b). Pending before the Court are the parties' motions for summary judgment, with briefs in support, and a response by the Commissioner. (Dkt. Entry Nos. 9–13.) This case is ripe for disposition on the record.

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 9) be **DENIED**, Defendant's Cross Motion for Summary Judgment (Dkt. Entry No. 11) be **GRANTED**, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

## I.  BACKGROUND

Plaintiff filed for disability benefits on April 6, 2011, alleging an onset date of September 15, 2007. (Dkt. Entry No. 10 at 1.)[1] Plaintiff's application was denied initially and upon

---

[1] Page numbers for docket entries refer to the electronically-assigned (PDF) page numbers via CM-ECF, upon opening the entire file.

1

reconsideration.  (*Id.*)  An administrative Law Judge ("ALJ") issued an unfavorable opinion denying

benefits in November 2012, but, upon appeal, the Appeals Council remanded Plaintiff's case based

on the ALJ's failure to include or conduct an adequate evaluation of the State Agency's

psychological consultant's opinion with regard to the RFC.  (*Id.* at 1–2.)

On remand, the ALJ arranged for a second psychological consultative examination and

subsequently held another hearing.  The ALJ denied Plaintiff's claim for benefits on September 19,

2014, and the Appeals Council denied review.  (*Id.* at 2.)

At the time of the alleged onset date, Plaintiff was a younger individual (under age 50), but

was a person "closely approaching advanced age" at the time of the hearings (age 50-54).  (*Id.*)  He

has a high school education and past relevant work as an auto mechanic and was employed for 27

consecutive years prior to his alleged onset date of disability. (*Id.*)

Plaintiff's alleged impairments included Hepatitis C, major depressive disorder, borderline

anxiety disorder, bipolar disorder, and personality disorder.  (*See*, *e.g.*, R. 54.)

## II.  STANDARD OF REVIEW

So long as the courts provide each party the opportunity to present his contentions in support

of his claim and enter judgment only on the basis of the pleadings and transcript of the record,

summary judgment is an acceptable device in cases seeking judicial review of the Commissioner's

final decision pursuant to 42 U.S.C. § 405(g) of the Act.  *Flores v. Heckler*, 755 F.2d 401, 403 (5th

Cir. 1985); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).  However, this Court's review of the

Commissioner's final decision to deny benefits under the Act, per 42 U.S.C. § 405(g), is limited to

two inquiries: (1) whether the proper legal standards were used in evaluating the evidence;  and (2)

whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Under the second permissible inquiry, substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Id.* If the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and must be affirmed. *Brown*, 192 F.3d at 496. Under this standard of review, this Court must carefully scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam). However, evidentiary conflicts are for the Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Brown*, 192 F.3d at 496 (alteration in original) (quoting *Johnson*, 864 F.2d at 343). This Court's judicial review is deferential to the Commissioner's decision, but without being so obsequious that it renders the review meaningless. *Id.*

Although the reviewing court does not reweigh the evidence or try the issues de novo, the court *does* analyze the evidence in determining whether substantial evidence exists, *e.g.*, *Leggett*, 67 F.3d at 564 (explaining that substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion), and, where relevant, in determining whether errors are harmful or prejudicial, *see, e.g., Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) ("[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's

decision."); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (explaining that, where an ALJ fails to fairly develop the record and facts, the claimant must show prejudice to justify a remand, which requires a showing the ALJ could and would have adduced evidence that might have altered the result, had the ALJ developed the record fairly and fully).

### III.  ESTABLISHING DISABILITY

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act.  42 U.S.C. § 423 (d)(1)(A); *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983). The law and regulations governing benefits under both Titles are the same.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A sequential five-step approach is used to determine whether the claimant qualifies as disabled.  *See* 20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proving the first four steps to show that:  (1) he is not presently engaged in substantial gainful activity;  (2) he has a severe impairment;  (3) the impairment is either listed or equivalent to an impairment listed in the appendix to the regulations; and, (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work.  *Leggett*, 67 F.3d at 564 n.2.  Once the claimant proves the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy.  *Greenspan*, 38 F.3d at 236–37.  The burden then shifts back to the claimant to rebut this finding.  *Newton v. Apfel*, 209 F.3d

448, 453 (5th Cir. 2000).  A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry.  *Leggett*, 67 F.3d at 564.

In this case, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset (R. 12);  (2) Plaintiff's bipolar disorder with depressive features, personality disorder, and anxiety disorder are severe impairments, while his Hepatitis C is not a severe impairment because it is controlled and no longer requires treatment (R. 12–13);  (3) however, the medically determinable severe impairments do not meet or medically equal one of the impairments listed in the appendix to the regulations (R. 13);  (4) he retains the residual functional capacity ("RFC") to perform medium work, except that Plaintiff is limited to occasional interaction with the supervisors, coworkers, and members of the general public, and he is limited to unskilled work (R. 14);  Plaintiff is unable to perform any past relevant work (R. 19);  and, (5), relying on the testimony of a vocational expert and considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, including warehouse worker, commercial cleaner, delivery driver, and packager (R. 19–20).  The ALJ then found that Plaintiff had not been under a disability from the alleged onset date through December 12, 2012.  (R. 20.)

## IV.  APPLICABLE LAW & ANALYSIS

The undersigned does not summarize the entirety of the administrative proceedings and record.  Rather, the undersigned addresses the primary issues and evidence disputed by the parties. The undersigned points out that this case does not concern Plaintiff's physical impairments and related symptoms; rather, the issues in this case revolve around Plaintiff's mental health impairments.

**Claim 1**

Plaintiff's first argument is that the ALJ erred when she failed to provide "good/specific/supported" reasons, pursuant to 20 C.F.R. § 404.1527(c), for giving little weight to the opinion of the examining psychologist, Dr. DeFerreire, who conducted a consultative mental examination of Plaintiff in May 2014 and found extreme mental limitations. (Dkt. Entry No. 10 at 4.) Plaintiff asserts that, while Dr. DeFerreire concluded Plaintiff has relative strengths in certain areas of work-related functioning, he nevertheless has "extreme" limitation (defined on the SSA form as "no useful ability to function") in the ability to understand and remember simple instructions; make judgments on simple work-related decisions; understand and remember complex instructions; and respond appropriately to usual work situations and to changes in a work setting. (Dkt. Entry No. 10 at 5–6.) She opined that he has "marked" limitations (defined on the SSA form as "a substantial loss in ability to function") in the ability to interact appropriately with the public, supervisors, or coworkers. (*Id.* at 6.) She stated that his prognosis is poor due to a combination of impaired cognitive skills, low IQ, some low academic skills, poor motivation for work, depression, several chronic illnesses, and ongoing alcohol abuse. (*Id.*)

In arguing about the nature of the error, Plaintiff asserts that, despite the remand by the Appeals Council and the subsequent psychological consultative examination by Dr. DeFerreire, the ALJ arrived at the exact same RFC as she did in the 2012 opinion. Plaintiff complains that the ALJ did not follow the remand order of the Appeals Council, disregarded the more recent psychological consultative examination by Dr. DeFerreire in favor of a 3 year-old consultative examination report by Dr. Cavasos Gonzales, made irrelevant statements about Plaintiff's alcoholism, and failed to adequately discuss the similarities in the record between the more recent evaluation and the medical

6

record as a whole.  (*See id.* at 4–16.)  Plaintiff argues that all of this resulted in harmful error because "[t]here can be no serious dispute that Dr. De Ferreire's opinions, if credited, establish (1) far greater, and more detailed, limitations than the ALJ's RFC; and (2) that Plaintiff is entitled to benefits because they demonstrate that he cannot meet even the most basic mental demands of competitive employment.  (*Id.* at 6.)

In response, Defendant argues that the ALJ did not err under circuit law or the regulations because the ALJ was not required to give Dr. DeFerreire's report more stringent consideration than she did, properly gave the report less weight, and did not fail to comply with the remand order.  (*See* Dkt. Entry No. 13.)  Also, Defendant argues that the final decision is supported by substantial evidence.  (*See* Dkt. Entry Nos. 12–13.)

The undersigned concludes that Plaintiff's first claim lacks merit and does not justify relief. Moreover, the undersigned finds that the ALJ's decision and findings are supported by substantial evidence.

The regulations require the Commissioner to evaluate every medical opinion it receives, regardless of its source.  20 C.F.R. § 404.1527(b)–(c).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  Generally, more weight is given to an opinion of a treating physician than to those given by other medical professionals, such as examining physicians and medical experts.  *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).  "The opinion of a specialist generally is accorded greater weight than that of a non-specialist."  *Newton*, 209 F.3d at 455 (citing *Paul v. Shalala*, 29 F.3d 208,

211 (5th Cir. 1994)).  Section 20 C.F.R. § 404.1527(c)(1) explains that "we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."

At the same time, an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  *Newton*, 209 F.3d at 455 (citation omitted).  However, an "ALJ cannot reject a medical opinion without an explanation."  *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000).

In Plaintiff's first claim, he asserts that the ALJ did not provide "good/specific/supported reasons" for giving "little weight" to the opinion of Dr. DeFerreire, the consulting psychologist who evaluated Plaintiff following the remand.  In support, Plaintiff cites to 20 C.F.R. § 404.1527(c) as the legal basis for his contention that the ALJ made a legal error under the regulations.  Section 404.1527(c) sets forth the factors the Commissioner must consider when weighing certain medical opinions.  These factors include:  (1) the physician's length of treatment of the claimant;  (2) the physician's frequency of examination;  (3) the nature and extent of the treatment relationship;  (4) the support of the physician's opinion afforded by the medical evidence of record;  (5) the consistency of the opinion with the record as a whole;  (6) the specialization of the treating physician; and, (7) any other considerations.  20 C.F.R. § 404.1527(c).

In addition, Plaintiff argues that "the ALJ's paltry analysis of Dr. De Ferreire's opinions failed to account for numerous factors," such as the fact that the Agency has a clear preference for Dr. DeFerreire's opinion as a source who examined Plaintiff close in time to the ALJ's September 2014 decision, citing 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

Plaintiff asserts that "more weight is given to opinions from sources with a more comprehensive understanding of the claimant's medical history," citing SSR 96-6p ("…the opinion of a [consultative examiner] may be entitled to greater weight… [the examiners] opinion is based on a review of a complete case record."). In Plaintiff's case, he argues Dr. DeFerreire acted as an examining program psychologist and that she had access to treatment records prior to her examination of Plaintiff— a fact that the ALJ's decision simply does not address at all. Plaintiff asserts that the ALJ also failed to acknowledge or address that Dr. DeFerreire is a mental health specialist (psychologist), citing 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Finally, Plaintiff argues that the ALJ did not acknowledge or discuss Dr. DeFerreire's status, as an Agency consultant, as an "expert in the evaluation of the medical issues in disability claims under the Act," citing SSR 96-6p; 20 C.F.R. § 404.1527(e)(2)(I). Plaintiff contends that, because the ALJ ordered the consultative examination following the remand, it "strains credulity" that the ALJ did not give more weight to Dr. DeFerreire's report in light of the reason for ordering it.

Contrary to Plaintiff's general argument that the ALJ erred under 20 C.F.R. § 404.1527(c), circuit law makes it clear that medical opinions by consultative examiners, even if they are specialists in their respective fields, do not fall under the rule Plaintiff urges first. In *Newton*, 209 F.3d at 456, the Fifth Circuit held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the *treating physician* only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527"—sometimes referred to as the "*Newton*

factors." Plaintiff does not contend, nor does the record support the conclusion, that Dr. DeFerreire was a treating physician. Plaintiff acknowledges that Dr. DeFerreire was a consultative examiner. Since *Newton*, the Fifth Circuit has not officially extended the *Newton* rule to consultative examiners, who typically see a patient one time at the request of the SSA or otherwise. *See Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008) (unpublished) (stating that a consultative examiner is not afforded the same deference as a treating physician); *see also* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, **psychologist**, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you."); 20 C.F.R. § 404.1527(b) (explaining how the SSA considers medical opinions and explaining that "[i]n determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The ALJ was not required to perform a detailed analysis of the "*Newton* factors" before declining to adopt or give significant weight to Dr. DeFerreire's findings and opinions because she is not a treating physician, but, rather, Dr. DeFerreire acted a consultative examiner.

Further, it is self-evident from the ALJ's decision that she recognized Dr. DeFerreire is a mental health specialist (psychologist), acted as a consultative examiner who saw Plaintiff one time, conducted the evaluation following the remand, was aware of the testing done by Dr. DeFerreire, and utilized Dr. DeFerreire's report as a tool to develop the record and to make a determination about Plaintiff's mental health impairments and his claim for benefits. Nothing in the record reflects otherwise, despite Plaintiff's arguments to the contrary. The ALJ even stated that she considered the opinion evidence in accordance with the requirements of 20 C.F.R § 404.1527 and Social Security Rulings (SSR) 96-2p, 96-5p, 96-6p, and 06-3p. (R. 15.) Moreover, none of the other

regulations or the SSA interpretive rulings Plaintiff points to *required* the ALJ to give more weight to Dr. DeFerreire's report or lead to the conclusion that she should have—for two other reasons. First, an ALJ is free to reject the opinion of any medical source when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455 (citation omitted). Second, evidentiary conflicts are for the Commissioner to resolve. *Brown*, 192 F.3d at 496.

Nevertheless, that does not mean the ALJ was permitted to fail to take into consideration Dr. DeFerreire's report or fail to provide her reasoning for giving the report less weight. The record, however, does not reflect that the ALJ failed to weigh the report against the totality of the evidence in the record or failed to explain her reasoning. The ALJ did both in this case after reviewing the totality of the record evidence, which included Plaintiff's testimony, the two mental health reports and opinions by consultative examiners, an assessment by the non-examining Agency psychologist and medical doctor, records from Tropical Texas Behavioral Health ('Tropical'), physical health records, including an evaluation by a physician named Dr. Juan Salazar, and the ALJ's consideration of Plaintiff's activities, subjective symptoms, and credibility.

The written decision reflects that the ALJ summarized all of the medical evidence in the case, including the psychiatric/psychological evidence. The ALJ noted that Plaintiff began mental health treatment in 2010. The ALJ set forth the varying mental health diagnoses of major depressive disorder, generalized anxiety order, bipolar disorder, and personality disorder. (R. 16.) The ALJ explained that Plaintiff was prescribed mental health medications through Tropical Texas Behavioral Health and through his primary care physicians. The ALJ observed that, while Plaintiff continued

11

to experience some symptoms, treatment notes reflected that the medications improved his condition.[2]  (R. 16; 480–481; 537; 551; 599; 605; 618.)

The ALJ discussed the June 2011 consultative examination report by Dr. Cynthia Cavasos Gonzales in detail.  (R. 16.)  The report reflected that he drove himself to the appointment, had recently been discharged from a substance abuse program, was not taking any psychiatric medications or receiving psychiatric treatment.  The ALJ noted that the report showed that Plaintiff had no difficulties with concentration or attention and was responsive, fully alert, and fully oriented. His thought processes were intact, affect was normal, memory was adequate, intelligence appeared average, insight was good, and judgment was adequate.  A Mini Mental Status Exam ("MMSE") suggested Plaintiff does not have cognitive impairment characteristic of dementia.  He had GAF of 60.  Dr. Gonzales concluded that Plaintiff had a fair prognosis and showed improvement with medication and educational interventions.  She opined that Plaintiff was able to make social and personal adjustments and fairly make occupational adjustments.  In the end, the ALJ gave "great weight" to Dr. Gonzales's evaluation because it was consistent with the medical evidence of record.

The ALJ conducted the two-step analysis of Plaintiff's subjective symptoms and assessed his credibility.[3]  (R. 15.)  The ALJ noted that Plaintiff complains that he does not like to talk to people, has difficulty getting along with others, is irritable, does not want to get out of bed, has difficulty concentrating, and experiences depressed moods.  He also indicated that his impairments

---

[2]  As a general rule, an impairment that can be controlled by medication or therapy cannot serve as a basis for finding a disability.  *E.g., Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citing 20 C.F.R. §§ 404.1530, 416.930, and *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)).

[3]  In determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96–8p.

affect his memory, talking, ability to complete tasks, and ability to understand and follow instructions.  The ALJ noted that at the 2012 hearing, Plaintiff testified that he was fired from his job for missing too much work, not for a medical reason.  The ALJ listed Plaintiff's daily activities in evidence, which showed that Plaintiff could care for his 90 year old mother, do yard work, mow the lawn, prepare meals, watch television, read, maintain personal hygiene and grooming, wash dishes, do laundry, sweep, mop, shop, drive, and spend time with others.  The ALJ concluded that Plaintiff's activities suggest a greater degree of functionality than alleged.  The ALJ concluded that, while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible or as limiting as alleged.  (R. 15–16; 19.)

Further tracking the medical evidence, the ALJ observed that treatment records from Tropical Texas Behavioral Health reflected that he reported he felt better, with improved mood, and was described as doing well overall.  (R. 16; 479–80.)  In December 2011, Tropical Texas Behavioral Health records also reflected that he was doing well, his medications were working, and his depression as "improved and manageable."  (R. 600.)  The ALJ discussed the records from Tropical in 2012, which generally showed that he was doing well and that his mental status exams were normal.  One record from September 2012 showed that he reported that he was doing well with good emotional control, even though he had been off his medications for over a week.  Throughout 2013, treatment records showed that this symptoms were on average very mild.  The record showed that his mental health care at Tropical was interrupted for a period because Plaintiff was incarcerated.  In 2014, after he resumed treatment following his release, Tropical records showed that his symptoms were relatively normal and mental status exam was mostly normal.

13

The ALJ summarized the evaluation by consultative examiner, Juan Salazar, M.D., who performed a physical consultative examination in April 2014.  (R. 17.)  The ALJ gave little weight to Dr. Salazar's opinion, which basically limited Plaintiff to sedentary work, noting that it was inconsistent with the medical evidence of record, including his own examination of Plaintiff.  The ALJ did note that Dr. Salazar's report reflected that Plaintiff's psychiatric examination was normal, showing that Plaintiff was cooperative and had an appropriate mood and affect.  (R. 17; 629.)

The ALJ then turned to the psychological consultative examination in June 2014 by Mary DeFerreire, Ph.D.  The ALJ noted that, at that time, Plaintiff reported that he was not taking any medications prescribed by his primary care physician and that he was independent in hygiene, able to maintain a residence, travel, prepare meals, and get along with his mother.  (R. 17; 638– 649).  He reported that he is able to complete tasks at home, and the report noted that he was able to complete the testing she administered during the evaluation.  The report noted, among other things, that Plaintiff's thought processes were coherent, logical, and goal-oriented and his affect was appropriate.  The report noted that Plaintiff's intellectual functioning was below average and that his long-term memory skills were impaired.  However, his immediate, remote, and short-term memory were intact, and his concentration was intact.  Dr. DeFerreire conducted three types of tests to assess Plaintiff's intelligence, academic skills, and memory, which the ALJ summarized.  Dr. DeFerreire assessed Plaintiff's GAF at 50.   Based on her total evaluation, Dr. DeFerreire concluded that Plaintiff has a poor prognosis due to impaired cognitive skills, low IQ, some low academic skills, poor motivation for work, depress[ion], chronic illnesses, and alcohol abuse.  (R. 645.)  She also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," in which she opined that Plaintiff has marked limitation to interact with the public, interact

14

appropriately with supervisors, as well as co-workers, and he has extreme limitations to respond appropriately to usual work situations and to changes in a routine work setting.  (R. 17; 648.)  The ALJ gave little weight to Dr. DeFerreire's assessment, finding that it was inconsistent with the medical evidence of record, further noting that the record stated that Plaintiff had relapsed with alcohol in August 2013.  The ALJ pointed out that Dr. DeFerreire did not document if Plaintiff was drinking at the time of the evaluation, which could contribute to misleading findings.  (R. 18).

The ALJ went on to discuss the varying GAF scores in the record and noted that since the amended alleged onset date, Plaintiff had scores ranging from 50 to 60.  (R. 18.)  The ALJ explained what each score level indicates in terms of functioning, but the ALJ emphasized that in weighing GAF scores, a GAF score is typically for the current level of functioning and that such scores can result in major variations.  The ALJ concluded that the GAF scores are not entitled to great weight in making disability decisions, explaining her reasoning.

The ALJ noted that no *treating physician* had expressed an opinion about Plaintiff's ability to perform work-related activities.  (R. 18.)

Lastly, the ALJ discussed the Psychiatric Review Technique Form (PRTF) and a Mental Residual Functional Capacity Assessment (RFC) from 2011, which were completed by Charles Lankford, Ph.D., a non-examining agency consultant charged with completing these standard assessments based on the record, which, in turn, were reviewed by an M.D.  (R. 18.)  *See* 20 C.F.R. § 404.1527(e) (explaining in great detail how opinions of non-examining sources, such as agency medical or psychological consultants, are evaluated and weighed in the decision-making process).  Dr. Lankford concluded that Plaintiff can understand, remember, and carry out simple instructions, make simple decisions, concentrate for extended periods, interact with others, respond to others, and

15

adhere to a schedule and perform routine tasks to completion at an adequate pace. (R. 18; 414– 426; 428–430.)  The ALJ afforded Dr. Lankford's opinions moderate weight.  At the same time, the ALJ noted that, based on Plaintiff's testimony and statements, Plaintiff could care for his 90 year old mother, do yard work, mow the lawn, prepare meals, watch television, read, maintain personal hygiene and grooming, wash dishes, do laundry, sweep, mop, shop, drive, and spend time with others.  (R. 18–19; 57; 63; 294–97; 317–18.)  Again, the ALJ noted that Plaintiff's mental health symptoms improve with medications, according to the evidence.

In formulating the RFC, the ALJ wrapped up her findings, stating that the RFC assessment "is supported by the longitudinal medical records, the opinions of the state agency consultants, and the claimant's activities of daily living."  (R. 19.)  Based on the evidence, the ALJ concluded that the evidence reflected that Plaintiff could have occasional interaction with supervisors, coworkers and members of the general public, and can perform unskilled work.

Returning to Plaintiff's arguments on judicial review, Plaintiff argues that the ALJ erred because the ALJ's paltry analysis of Dr. De Ferreire's opinions failed to discuss or acknowledge other record evidence supporting Dr. De Ferreire's findings, such as some of the Tropical Texas Behavioral health records, certain aspects by Dr. Lankford's report (the non-examining agency psychologist), and findings in the MMSE's.  That may be so to some extent, but the undersigned points out, again, that the ALJ discussed all of the record evidence in detail.  The undersigned has reviewed the treatment records from Tropical Texas Behavioral Health and the other medical records and finds that the ALJ's description of these records was reasonable and accurate.  That the ALJ did not connect more of the evidentiary dots or make more explicit findings about the similarities and dissimilarities of the evidence in her written decision as Plaintiff would have liked does not mean

the ALJ reversibly erred, as the ALJ discussed the medical evidence in detail, made the required, fundamental findings at each Step, and sufficiently explained her reasoning in the decision. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that bare conclusions are sometimes beyond meaningful judicial review but also acknowledging that an ALJ is not required to do an exhaustive point-by-point discussion of the evidence). Plaintiff's primary contention comes down to a disagreement with the ALJ's disposition of the evidence. However, evidentiary conflicts are for the Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Brown*, 192 F.3d at 496 (alteration in original).

What the ALJ faced in this case was conflicting, competing evidence about Plaintiff's mental health impairments. There were "dueling" consultative examinations. There were variations in the records from Tropical about Plaintiff's symptoms and overall condition. Some of the Tropical records showed that Plaintiff's condition and symptoms were more severe at times, but they also showed that Plaintiff's condition and symptoms were less severe at times.[4] The ALJ relied on Tropical records showing that his symptoms were generally mild or within normal limits and positive statements by Plaintiff during his visits to Tropical. (R. 16–17; 480; 598–599; 605; 711; 717.) These records were consistent with Dr. Gonzales's report, which, in turn, was consistent with Plaintiff's testimony, the ALJ's evaluation of his subjective complaints, the absence of any cognitive/psychiatric issues in Dr. Salazar's report, and the non-examining reviewing physician's

---

[4] Although Plaintiff argues that Dr. De Ferreire's evaluation was more probative because it was the most recent consultative examination, the undersigned observes that the ALJ relied in part on Tropical treatment notes near the time of Dr. De Ferreire's evaluation.

findings.   The ALJ noted that the evidence showed that Plaintiff's condition improved with medications.  The ALJ noted that Dr Lankford's mental RFC assessment showed marked limitations in the ability to understand, remember, and carry out detailed instructions and moderately limited abilities to socially interact and adapt to work changes.   (R. 428–429.)   The ALJ's RFC determination took these findings into account, and she did not dismiss them entirely.[5]  The ALJ accorded Dr. Lankford's findings "moderate weight."  (R. 18)  Based on the foregoing evidence, the ALJ gave Dr. De Ferreire's opinions and findings less weight because they did not find support in the evidence as a whole.   The undersigned concludes that the foregoing evidence supports the ALJ's decision to give more weight to Dr. Gonzales's report and less weight to Dr. De Ferreire's, and nothing in the case law, regulations, or interpretive rulings required the ALJ to give more weight to Dr. De Ferreire's report in light of the record.  *See Myers*, 238 F.3d at 621 (explaining that medical opinions are not conclusive because the ALJ has the ultimate responsibility of determining disability status);  *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) ("[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.");  *Brown*, 192 F.3d at 496 (stating that evidentiary conflicts are for the Commissioner, not the courts, to resolve).  The undersigned also concludes that the evidence just-described shows that the ALJ's findings are supported by substantial evidence.  *See Leggett*, 67 F.3d at 564 (explaining that substantial evidence is more than a scintilla, but less than a preponderance.)

Plaintiff argues that the record also contains evidence that, despite treatment and medications, Plaintiff continued to have *some* difficulty with or symptoms from his mental health

---

[5]  The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform medium work, except that Plaintiff is limited to occasional interaction with the supervisors, coworkers, and members of the general public, and he is limited to unskilled work.  (R. 14.)

issues.  However, the ALJ recognized that Plaintiff had some mental health limitations and recognizable symptoms (R. 15–16; 19), just not to the degree Plaintiff alleged, and she incorporated certain mental health limitations into the RFC.  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (explaining that "the determination of residual functional capacity is the sole responsibility of the ALJ"); *Leggett*, 67 F.3d at 564 n.2  (explaining that the claimant bears the burden of proving the first four steps).

Plaintiff also makes a few other minor arguments under his first claim.  One is that the ALJ did not honor the remand order, which, he argues, is evident by the fact that the ALJ reached the exact same RFC as was reached in the 2012 decision.  However, as Defendant correctly argues, the Appeals Council did not remand Plaintiff's case in 2013 because the RFC was incorrect or not supported by substantial evidence but, rather, because the RFC did not address some of the limitations assessed by Dr. Lankford, and the ALJ did not provide reasons for disregarding certain limitations.  (R. 102–103.)  The Appeals Council found that a more comprehensive discussion of the impact of Plaintiff's mental limitations on the RFC was required and directed that the ALJ give further consideration to Plaintiff's maximum RFC during the entire period at issue and provide rational with reference to the evidence of record.  (R. 103.)

Plaintiff also complains that it  was "simply false, and absurd . . . for the ALJ to state that Dr. De Ferreire's opinion was entitled to less weight because she failed to 'document' if Plaintiff was 'drinking in June 2014,'" which the ALJ noted in her decision.  Continuing, Plaintiff notes that the ALJ found that Plaintiff's history of substance abuse was in remission as of the date of her 2012 decision (R. 87), and she did not even include substance abuse as an impairment in her 2014 decision.  Plaintiff points out that the ALJ also reported, with no attempt to discredit, Plaintiff's

description that he had been sober since April 2011, with one relapse in August 2013, which was noted by Dr. De Ferreire in her report.  Moreover, although Dr. De Ferreire did indicate that Plaintiff's history of substance abuse could be the cause of his impaired cognitive functioning, nothing in her report even remotely suggests even the suspicion that Plaintiff was still using substances.  According to Plaintiff, the ALJ never explains why Dr. De Ferreire had an obligation to discuss an impairment which, even by the ALJ's own description, was a nonfactor by the time of her examination, and the ALJ's decision in September 2014.  The undersigned finds that this alleged error was harmless.  *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (finding harmless error because it was inconceivable that the ALJ would have reached a different conclusion on the particular record, absent the error); *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996 ) ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.").  First, as Plaintiff acknowledges, Plaintiff's history of substance abuse had no relevance to the ALJ's critical findings in this case.  Second, by the time of the 2012 hearing, Plaintiff's representative told the ALJ that they were not pursuing an impairment based on alcoholic dementia.  (R. 13.)  Third, the ALJ's statements about Plaintiff's use of alcohol in relation to Dr. De Ferreire's report was not the primary reason for giving it less weight.    Instead, the ALJ found that Dr. De Ferreire's report was inconsistent with the record.  (R. 17–18.)

**Claim 2**

For his second claim, Plaintiff argues that the ALJ erred when she failed to take into consideration Plaintiff's 26-year work history when evaluating Plaintiff's credibility.  (Dkt. Entry No. 10 at 17–18.)  Plaintiff acknowledges that he understands courts are generally reluctant to

overrule the credibility findings of an ALJ, understands the reasons why, and generally agrees with those reasons. Nevertheless, Plaintiff argues, "the deference due to such findings does not make the topic sacrosanct." Plaintiff takes issue with the credibility finding to the extent it does not fairly factor in consideration of his strong work history. Plaintiff states that for 26 years, starting in 1981 and ending in 2007, the year of his alleged onset date, Plaintiff earned 4 quarters of coverage every single year, for a total of 108 quarters of coverage. Plaintiff argues that under SSRs 96-8p and 96-7p, the ALJ was required to consider Plaintiff's strong work history as part of his credibility analysis, but failed to do so. According to Plaintiff, "[c]ase law has long recognized the regulatory and rational basis for this requirement; the courts that have so held have reasoned that it is unlikely someone would trade in their productive, and lucrative, work career for the far less lucrative 'career' of receiving disability benefits," citing *Taybron v. Harris*, 667 F.2d 412 (3d Cir. 1981), *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), as well as some corollary Texas District Court decisions, in support. However, "[t]o be clear, Plaintiff is not suggesting that the credibility factor of work history carries more weight than the other factors, or that his stellar work history entitled him to enhanced credibility."

In response, Defendant argues that the ALJ did err as alleged because Plaintiff is relying on a legal rule or principle that has not been adopted in the Fifth Circuit and is otherwise inapplicable. (*See* Dkt. Entry No. 13.)

The "rule" from the cases Plaintiff cites to stands for the proposition that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *E.g., Singletary v. Secretary of Health, Education and Welfare*, 623 F.2d 217, 219 (2d Cir. 1980). As correctly pointed out by Defendant, this "rule" has not been incorporated into

Fifth Circuit precedent.  Plaintiff acknowledges that the rule in the Fifth Circuit is that great deference is afforded to the ALJ's credibility determination.  *See, e.g.*, *Newton*, 209 F.3d at 459. The record reflects that Plaintiff's work history was discussed at the hearing and in the written decision. However, the ALJ was not required as a matter of law to draw such a favorable credibility inference from Plaintiff's work history (particularly to the exclusion of other evidence record). Notably, there is no indication that Plaintiff's representative even argued for such a favorable inference at the administrative level;  instead, consistent with Fifth Circuit rules, counsel argued at the end of the hearing that Plaintiff's erratic behavior towards the end of his work tenure lent credibility to his subjective complaints of disabling mental health impairments. (*See* R. 76–77.) *See Leggett*, 67 F.3d at 564 n.2 (explaining that the plaintiff has the burden of proving the first four steps);  *see also Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994) (noting that, while the claimant's recent unsuccessful efforts to hold jobs for extended periods cast some doubt on her fitness to work, it is not the court's job to reweigh this evidence).  In summary, the ALJ did not err as alleged under the regulations or Fifth Circuit case law, and Plaintiff fails to show any reason why the ALJ's credibility determination is not entitled to great deference on judicial review.

In summary, the undersigned finds that the ALJ did not reversibly err as alleged by Plaintiff, and a remand is not warranted on the grounds alleged.  The undersigned also finds that the decision to deny benefits is supported by substantial evidence, as argued by Defendant and as supported by a review of the ALJ's decision and the record, and the decision to deny benefits should be affirmed.

# V.  CONCLUSION

### *Recommended Disposition*

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 9) be **DENIED**, Defendant's Cross Motion for Summary Judgment (Dkt. Entry No. 11) be **GRANTED**, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 31st day of March, 2017.


_Dorina Ramos_
Dorina Ramos
UNITED STATES MAGISTRATE JUDGE